ARMSTRONG *vs.* BYRNE, and others.

Where an assignment professed to provide for creditors named in a schedule: by directing the proceeds of the assigned property to be divided among them *pro rata*, but that the creditors, as a condition of receiving the dividend, should release the balance of their debts; and also, that any creditor not giving a discharge within five days after a dividend was declared and received, should be precluded from all benefit: *Held,* to be a fraudulent assignment.

Debtors who stipulate for an absolute discharge before a creditor is to have the benefit of the property, assume to themselves a power over the creditors for their own personal advantage.

Where all the creditors or the greater part of them do not conform to the terms of an assignment, a trust results to the debtors; and the assignees would be liable to account to them for any surplus in their hands.

SARAH BYRNE and Richard B. Fletcher, two of the defendants, were partners in business, under the firm of Byrne & Co. Having become insolvent, they made an assignment of their stock in trade, on the twenty-fifth day of May, 1829, to the defendants, John S. Mackie and William W. Scrugham, in trust, to be sold and disposed of, and the proceeds (with the outstanding debts, which were also assigned) to be divided *pro rata* amongst the several creditors mentioned in a schedule annexed to the assignment.

The asssignment contained the following clause : " The said " creditors or such as agree to receive their equal dividend or " share of the said sales or debts, according to their several pro- " portions, upon payment or receipt thereof, executing to the " said Fletcher and Byrne a release and discharge of whatever " balance may remain due them, if any should remain, after " such dividend and payment, and not otherwise. The share " or proportion of any creditor who shall neglect or refuse " for five days after dividend made, to receive his share, to be

*August 1,*
1831.

*Fraudulent
assignment.
Creditors.*

1831.

ARMSTRONG
v.
BYRNE.

" equally divided between such of said creditors as shall accept " of the composition."

On the first day of August, 1829, the complainant recovered a judgment against the assignors; and thereupon issued an execution, which was returned *nulla bona.* He then filed a bill in this court, for the purpose of setting aside the assignment. Proofs were taken in the cause.

Mr. *H. S. Mackay,* for the complainant.

Mr. *S. D. Craig,* for the defendants.

*September* 27.    THE VICE-CHANCELLOR.    The bill in this case seeks to set aside the assignment upon two grounds: 1st. Because it is fraudulent upon the face of it; and 2d, on account of the subsequent conduct of the parties: showing it was fraudulent in fact.

The last ground is not sustained so far as the assignees are concerned. But, the first point presents a much more serious question. The assignment professes to provide for the creditors named in a schedule, by directing the proceeds of the assigned property to be divided among them in proportion to the amount of their respective debts. If it stopped here, it would be unobjectionable. But it goes further: it declares—as a condition of their receiving a dividend—that the creditors shall release the balance of their debts; and also, that any creditor not receiving his dividend and giving a discharge within five days after a dividend is declared, shall be precluded from the benefit of the assignment, and the whole of the property is then to be divided among those creditors who accept of the composition.

This attempt to coerce creditors into terms which the debtor chooses to prescribe, is against the policy of the law and entirely vitiates the assignment. A debtor in failing circumstances may lawfully assign his property for the benefit of his creditors, and prefer one creditor or a class of creditors. But he shall not fix terms or conditions in order to benefit himself; and likewise say to his creditors, " you must subscribe to these " provisions or you shall not touch the property." Such con-

ditions are inadmissible. He does not benefit himself by merely creating a preference of payment amongst his creditors, because he remains liable to the others until all his debts are paid: but if he stipulates for an absolute discharge before a creditor shall have the benefit of the property, he thereby assumes to himself a power over the creditors for his own personal advantage, namely, of being discharged from his debts by a payment of a part only. And if he can be allowed to lock up his property by means of such an assignment, until the creditors comply with his terms, he can successfully delay, hinder and defraud his creditors. It is thus brought within the statute made to prevent fraudulent transfers of debtors' property. The principles upon which the decision in *Hyslop* v. *Clarke*, 14 *J. R.* 458, was made, are strongly applicable, and, in my judgment, decisive of the present case.

It has been urged in argument, that the clause of the assignment in question was only intended as one mode of creating a preference amongst the creditors, by giving to those who might accept the composition (as it is called) the benefit of what others might decline : and therefore, not unlawful. If that were the case, I certainly should not be disposed to interfere. But it is impossible to avoid seeing that a preference among the creditors was not the sole object:—the debtor, as I have already shown, was stipulating for his own benefit, and by this contrivance endeavouring to coerce his creditors into a compliance with his terms.

It is true the assignors have not, in express terms, reserved any thing for themselves. In this respect, the present case differs from some leading ones which have been decided in our courts. Still, suppose all or the greater part of the creditors had declined the terms offered by the assignment: a trust would have resulted in favor of the assignors, and the assignees would be liable to account to them for the surplus remaining in their hands.

I must declare the assignment void for fraud upon the face of it.

11.

(The court went on to direct a reference to a master to re-port upon the amount due to the complainant and other judg-ment creditors; and reserved all further matters.)